UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-CV-00180-FDW-DSC

| | |
|---|---|
| SHERRY M. POTTER-RIDLON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) **ORDER** |
| AETNA LIFE INSURANCE COMPANY, MAERSK, INC., and MAERSK INC. LONG TERM DISABILITY GROUP COVERAGE PLAN, | ) ) ) ) ) |
| Defendants. | ) |

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment (Docs. No. 12, 16), and Plaintiff's Memorandum in Opposition (Doc. No. 15). After review of the parties' briefs and oral argument, for the reasons set forth below, the Court will **GRANT** Defendants' motion.[1]

Plaintiff Sherry M. Potter-Ridlon (hereinafter "Plaintiff") seeks payment of long term disability ("LTD") benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").

Defendant Aetna Life Insurance Company (hereafter "Aetna") is an administrator for the Maersk Inc. Long term Disability Group Coverage Plan. Defendant Maersk, Inc. (hereafter "Maersk") provided its employees at all relevant times the Maersk Inc. Long term Disability Group Coverage Plan (hereafter "the Plan"), a Group Policy issued and insured by Defendant Aetna and identified as policy No. GP-877132. Plaintiff alleges that Defendants improperly terminated her LTD benefits under the Plan by altering the terms of the Plan by classifying her as a Class 1

---

[1] Plaintiff's breach of contract claim was dismissed by this Court on July 14, 2015 (Doc. No. 10).

1

employee and, in doing so, changed the test of disability. As a nonunion employee, Plaintiff is a Class 1 employee. See Administrative Record ("Record"), (R. 7010226).[2] The Record contains no evidence that Plaintiff is anything other than a Class 1, non-union employee. (R. 7010226). Plaintiff did not assert in the claim process below, nor in her case pleadings, that she is a Class 2 employee. Plaintiff presented no evidence that she is a Class 2 employee and nor anything to refute Defendant's classification of her as a Class 1, non-union employee. Therefore, there is no issue of fact regarding Plaintiff's status as a non-union employee such that her claim that Defendants changed the test applicable for her LTD benefits fails and the record demonstrates that Defendants' did not abuse their discretion in denying Plaintiff LTD benefits. Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

### A. Employment Information and Job Duties

From May, 2004, until approximately September, 2010, Plaintiff Potter-Ridlon was, at all relevant times, an active employee with Defendant Maersk, Inc. at its Charlotte location, working in the position of Finance or Collections Supervisor, a sedentary job. (R. 7010890-1). Plaintiff's last day at work at Maersk was August 19, 2010.

### B. History of Plaintiff's Medical Conditions and Limitations

On August 20, 2010, Plaintiff made a claim for short term disability ("STD") benefits pursuant to the terms of the STD Plan, claiming that she was disabled due to low back pain and pain radiating to her lower left extremity. Aetna received an Attending Physician's Statement ("APS") and records from Plaintiff's primary care physician, Dr. Tanya Chin, indicating that

---

[2] Defendant filed the Administrative Record with this Court on October 19, 2015.

Plaintiff underwent epidural steroid injections (R. 7010164). The records submitted by Dr. Chin noted that Plaintiff was unable to work due to restrictions of no prolonged sitting, standing, walking, or repetitive standing activities. (R. 7010132-136). Plaintiff's claim for STD benefits was approved. (R. 7010018). Plaintiff's STD benefits were extended until the end of the STD period. (R. 7010051. Plaintiff's claim was then transferred to LTD on January 26, 2011. (R. 7010054).

Plaintiff's claim for LTD benefits was approved due to the pending L4/S decompression fusion surgery with Dr. William Hunter, a neurosurgeon, and associated recovery time. On February 7, 2011, Plaintiff underwent an L4/S decompression fusion. (R. 7010983). Consequently, Plaintiff's LTD claim was supported through July 14, 2011.

After a series of medical evaluations and appointments, Plaintiff underwent fusion surgery on December 15, 2011, performed by Dr. Hunter. (R. 7010907). Plaintiff's LTD claim continued throughout this time period. Dr. Hunter completed another APS on August 16, 2012, and indicated that a functional capacity evaluation ("FCE") was required to determine her functional capacity. (R. 7010693-694).

Aetna continued to review Plaintiff's claim and evaluated whether she was unable to work in any reasonable occupation, as the Plan provides for a change in the test of disability after the first 24-months for Class 1, non-union employees. On October 27, 2012, Aetna obtained a peer review from Dr. Lawrence Blumberg, Board Certified in orthopedic surgery. (R. 7010893-896). The FCE was conducted on March 13, 2013, by Daniel Domingo, PT. (R. 7010864-873). During the FCE, a history of Plaintiff's condition, as well as an evaluation of her ability to perform certain functions was conducted. The FCE found that Plaintiff could perform part-time sedentary work for four (4) hours a day/twenty (20) hours per week and that she could lift 3 lbs.

Id. An Individual Medical Examination ("IME") was performed on April 30, 2013, by Dr. T. Kerri Carlton. Dr. Carlton determined that he agreed with the FCE that Plaintiff was capable of performing four (4) hours of sedentary work but would need to change positions as needed. (R. 7010859-861).

Aetna obtained a labor market survey to determine whether there were any reasonable occupations that Plaintiff could perform. (R. 7010736-741). Plaintiff was interviewed in connection with the survey to ascertain her education, skill, and experience. Three (3) positions were found which Plaintiff could perform based on her experience, training, and education, applying her restrictions and limitations, and which met the minimum wage requirement of $41.42 per hour (80% of her pre-disability earnings). (R. 7010836-842).

On June 11, 2013, Aetna sent the FCE and IME to Dr. Hunter and another physician, Dr. Aronoff for review. By letter dated July 2, 2013, Dr. Hunter confirmed that based on his review of the FCE and IME, and his treatment of Plaintiff, Plaintiff could work a sedentary position on a part-time basis. (R. 7010751). On July 13, 2013, Dr. Aronoff also confirmed that Plaintiff could work in a part-time sedentary position. (R. 7010752-753). In light of the statements from Drs. Aronoff and Hunter, the labor market survey, the independent peer review, the results of the FCE and IME, and the records in Aetna's possession, Plaintiff's LTD claim was terminated on August 29, 2013. (R. 7010788-792).

Plaintiff, through her attorney, appealed the decision on February 24, 2014. (R. 70100412). Plaintiff's counsel raised concern that Plaintiff's condition was below sedentary, including claims that she was mentally unable to work because of the medication she took affected her memory and caused fatigue. (R. 7010781-2). In connection with the appeal, Plaintiff submitted additional medical records and a vocational evaluation report by J. Adger

Brown. (R. 7010760-765). On appeal, Aetna obtained a peer review from Dr. Stuart Rubin, Board Certified in Physical Medicine and Rehabilitation. (R 7010609-612). Dr. Rubin reviewed all of the medical records and the submissions and concluded there was no support for functional impairment. Id. Dr. Rubin also concluded there was no adverse medication effects noted in the records. Id. Aetna also obtained a peer review from Dr. Robert Swotinsky, Board Certified in occupational medicine. Dr. Swotinsky concluded the medical records contained no clinical findings demonstrating Plaintiff lacked the capacity to work on a full-time sedentary basis. (R. 7010614-619).

After completing its review, Aetna sent a letter dated September 3, 2014 to Plaintiff's counsel upholding its decision to terminate Plaintiff's LTD benefits. (R. 70100597-599). In the denial letter, Aetna noted that while the records showed the presence of abnormalities, they indicated she was capable of performing work within the sedentary physical demand level, at least on a part-time basis. Id.

Plaintiff has exhausted her administrative remedies.

### C. Applicable Plan Provisions

Maersk established the Plan, which provided certain LTD benefits to eligible employees. Plaintiff was an eligible employee under the Plan. Aetna insures the LTD benefits under the Plan and serves at the claim administrator. (R. 7000014). The Plan provides as follows:

> This Plan will pay a Monthly Benefit for a period of disability caused by a disease or **injury**. . . .
>
> **Test of Disability**
> *As to Class 1 Employees*:
> From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

5

- you are not able to perform the **material duties** of your **own occupation** solely because of: disease or **injury**; and
- your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation** solely because of:

- disease; or
- injury.

*As to Class 2 Employees*:
You will be deemed to be disabled on any day if:

- you are not able to perform the **material duties** of your **own occupation** solely because of: disease or **injury**; and
- your work earnings are 80% or less of your adjusted predisability earnings.

If your **own occupation** requires a professional or occupational license or certification of any kind, you will not be deemed to because of the loss of that license or certification.

\*\*\*

**A Period of Disability**
A period of disability starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan. You must be under the regular care of a physician. (You will not be deemed to be under the regular care of a physician more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.) . . .

Your period of disability ends on the first to occur of:
- The date Aetna finds you are no longer disabled or *the date you fail to furnish proof that you are disabled*. [emphasis added]
- The date Aetna finds that you have withheld information which indicates you are performing, or are capable of performing, the duties of a **reasonable occupation**.
- The date you refuse to be examined by, or cooperate with, an independent physician or a licensed or certified health care practitioner, as requested.

> - The date you cease to be under the regular care of a physician.
> - *The date an independent medical exam report or functional capacity evaluation fails to confirm your disability.* [emphasis added]
> - The date you reach the end of your Maximum Benefit Duration.
> - The date your condition would permit you to work, or increase the number of hours you work, or the number or type of duties you perform in your **own occupation**, but you refuse to do so.
>
> ***
>
> A period of disability will end after 24 months if it is determined that the disability is primarily caused by:
> - a Mental Health or Psychiatric condition, including physical manifestations of these conditions, but excluding those conditions with demonstrable, structural brain damage; or
> - Alcohol and/or Drug Addiction. . . ..

(R. 7000020-21) (emphasis in original, italics added). The Plan also contains a Glossary with the following definitions.

> **Own Occupation**
> This is the occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:
> - for your specific employer; or
> - at your location or work site; and without regard to your specific reporting relationship.
>
> ***
>
> **Reasonable Occupation**
> This is any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 80% of your **adjusted predisability earnings**.

(R. 7000032) (emphasis in original).

## D. NATURE OF THE CASE

7

On March 20, 2015, Plaintiff, filed this action against Defendants LTD benefits under Section 1132 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (1982). Plaintiff has exhausted her administrative remedies.

## II. LEGAL STANDARD

### A. Standard of Review for Summary Judgment

A motion for summary judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the ... pleading[s], but [must] . . . , by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. Review Under ERISA

ERISA allows plan participants or beneficiaries who are denied benefits under an employee benefit plan to challenge the plan administrator's denial in federal court. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). Unlike claims made on over-the-counter insurance plans that a consumer may acquire in the marketplace,

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties'

> in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan; it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a 'full and fair review' of claim denials, and it supplements marketplace and regulatory controls with judicial review of individual claim denials.

Id. at 115 (citations omitted).

"In reviewing the denial of benefits under an ERISA plan, a district court first must consider *de novo* whether the relevant plan documents confer discretionary authority on the plan administrator to make a benefits-eligibility determination." DuPerry v. Life Insurance Company of North America, 632 F.3d 860, 869 (4th Cir. 2011). "When a plan by its terms confers discretion on the plan's administrator to interpret its provision and the administrator acts reasonably within the scope of that discretion, courts defer to the administrator's interpretation." Id. (*quoting* Colucci v. Agfa Corp. Severance Pay Plan, 431 F .3d 170, 176 (4th Cir.2005)).

The fact that a plan administrator, acting as a fiduciary, may have a conflict in interest in serving as both the reviewer and payer of claims is "but one factor among many that a reviewing judge must take into account." Glenn, 554 U.S. at 116; *see also* Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 630–31 (4th Cir. 2010) (holding that after the Supreme Court's decision in Glenn, the Fourth Circuit's previous "modified abuse of discretion standard," which had been applicable in cases where the administrator both reviewed and paid claims, was no longer appropriate, and courts should simply apply an unaltered abuse of discretion standard of review). In the Fourth Circuit, a district court reviewing the final decision of a plan administrator

> must be guided by principles of trust law, taking a plan administrator's determination as 'a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).' Second, courts must 'review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary.' Third, when the plan grants the administrator

>'discretionary authority to determine eligibility for benefits ... a deferential standard of review is appropriate.' And fourth, '[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'

Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 358 (4th Cir. 2008) (citations omitted).

Here, the LTD Plan gives Aetna (the Plan administrator) discretion in deciding questions of eligibility for benefits; thus, this Court reviews such determinations for an abuse of discretion. *See* Williams, 609 F.3d at 629–30. Under an abuse of discretion standard, the court may not "substitute [its] own judgment in place of the judgment of the plan administrator." Id. at 630. Thus, a trial court will not disturb a plan administrator's decision if it is "reasonable." Id.

Under the abuse of discretion standard, a court "may not disturb a long term disability determination made by [the administrator] so long as its decision is reasonable." Booth v. Wal–Mart Stores. Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000).

A decision is "reasonable" if it: (1) results from a deliberate, principled reasoning process; and (2) is supported by "substantial evidence." Williams, 609 F.3d 622, 630. Substantial evidence is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion [and] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984); *see also* DuPerry, 632 F.3d at 869. In determining reasonableness, the Fourth Circuit has "identified eight nonexclusive factors that a court may consider" in determining whether a plan administrator abused its discretion in denying a benefits claim. Those factors are:

> (1) The language of the plan; (2) The purpose and goals of the plan; (3) The adequacy of the materials considered to make the decision and the degree to which they support it; (4) Whether the decision-making process was reasoned and principled; (5) Whether the decision comports with other provisions in the

> plan and with earlier interpretations of the plan; (6) Whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) Any external standard relevant to the exercise of discretion; and (8) The Administrator's motives or any conflicts of interest it may have.

Champion, 550 F.3d at 358 (*quoting* Booth, 201 F.3d at 342–43). Some courts have applied these factors piece-meal, *see* Wasson v. Media General, Inc., 446 F.Supp.2d 579 (E.D.Va.2006) (noting in which party's favor each factor weighed), and others have examined the factors collectively to determine whether the plan administrator's decision was the result of a reasoned and principled process supported by substantial evidence. *See* DuPerry, 632 F.3d 860, 869. However, the Booth factors are but a more particularized statement of the Court's basic inquiry: whether the decision was "the result of a deliberate, principled reasoning process and "supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

Finally, this court's review is limited to the record that was before the plan administrator at the time of final determination. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994) ("[A]n assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.").

With such framework in place, the court has carefully considered Defendants' motion for summary judgment. For the reasons that follow, the Court upholds the final decision of the Defendants.

## III. ANALYSIS

### A. Conflict of Interest

Plaintiff argues that this Court should review her ERISA claims under a standard "that takes into account the fact that the Plan Administrator is operating under a conflict of interest." (Doc. No. 15, at 16). As noted above, this Court finds that Defendant Aetna is operating as the

administrator and the insurer of the Plan. However, the LTD Plan gives Aetna (the Plan administrator) discretion in deciding questions of eligibility for benefits; thus, this Court reviews such determinations for an abuse of discretion. *See* Williams, 609 F.3d at 629–30. In Met Life Ins. Co. v. Glenn, the Supreme Court held that the reviewing court should consider conflict of interest as one of many factors in determining whether the plan administrator abused its discretion in denying benefits. 554 U.S. 105, 106, (holding "[t]he significance of the conflict of interest factor will depend upon the circumstances of the particular case. . . .[It] does not imply a change in the *standard* of review. . . And it is not necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. . . . [T]he word "factor" implies, namely, that judges reviewing a benefit denial's lawfulness may take account of several different considerations, conflict of interest being one."). Hence, this Court will follow the guidance of the Fourth Circuit and consider a conflict of interest as a factor in evaluating the actions upon Plaintiff's claim. *See* Champion, 550 F.3d at 358 (*quoting* Booth, 201 F.3d at 342–43). Aetna terminated Plaintiff's LTD claim after 24 months and ultimately upheld the termination on internal appeal after a thorough, well-reasoned decision making process comprised of independent peer reviews, an IME, a FCE, a labor market analysis, and input from Plaintiff's treating physicians. In light of the measures undertaken by Aetna, Defendant's structural conflict of interest diminishes. *See e.g.* Glenn, 554 U.S. at 115.

**B. Defendants' Did Not Alter the Terms of the Plan in Denying Plaintiff's LTD Claim**

Plaintiff asserts Defendants changed the LTD benefit standard. This claim fails because Plaintiff misconstrues the applicable portions of the Plan and the relevant portions of the employment and claim file in the Administrative Record. The Plan lays out the standard for determining benefits for Class 1 employees as follows:

> This Plan will pay a Monthly Benefit for a period of disability caused by a disease or **injury**. . . .
>
> **Test of Disability**
> *As to Class 1 Employees*:
> From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:
>
> • you are not able to perform the **material duties** of your **own occupation** solely because of: disease or **injury**; and
> • your work earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation** solely because of:
>
> • disease; or
> • injury.

(R. 7000020) (emphasis in original). As a nonunion employee, Plaintiff is a Class 1 employee. (R. 7010226). The Administrative Record contains no evidence that Plaintiff is anything other than a Class 1, non-union employee. (R. 7010226). The Initial Assessment from Aetna's files, provided to Plaintiff during discovery, reflects the following entry:

> Name: Potter, Sherry
> Plan: GA (024 00001) - ALL NONUNION, FULL TIME HOURLY/SALARIED EMPLOYEES REGULARLY SCHEDULED TO WORK AT LEAST 40 HOURS PER WEEK OR ALL NONUNION, FULL-TIME HOURLY/SALARIED EMPLOYEES REGULARLY SCHEDULED TO WORK AT LEAST 32 HOURS PER WEEK AS [APPROVED, CERTIFIED, OFFICIAL] PARTICIPANTS IN THE MAERSK REDUCTION OF HOURS PROGRAM (Class 1 non Union)
> ER: Maersk
> Occ: Supervisor Collection

(R. 7010226). Plaintiff did not assert in the claim process nor the appeal of the denial of the claim below, nor in her case pleadings, that she is a Class 2 employee. Plaintiff presented no evidence

that she is a Class 2 employee nor anything to refute Defendants' classification of her as a Class 1, non-union employee. Therefore, there is no issue of fact regarding Plaintiff's status as a non-union employee such that her claim that Defendants changed the test applicable for her LTD benefits fails.

### C. Defendants' Did Not Abuse Their Discretion in Denial of Plaintiff's LTD Claim

In considering whether Defendants' decision to deny Plaintiff's claims was reasonable, the Court first finds that Aetna's decision resulted from a deliberate, principled reasoning process under the first prong. William, 609 F.3d at 630.

Applying the standard discussed above, the Court has concluded that the following narrative represents the facts for purposes of resolving the motions for summary judgment. During the relevant times for purposes of her long term disability claim, Plaintiff Potter-Ridlon's diagnoses include a) lumbar degenerative disc disease, and displacement of lumbar intervertebral disc, b) lumbar stenosis; c) foraminal stenosis, d) peripheral neuropathy, e) lumbar radiculopathy, and e) depression and anxiety. These diagnoses occurred after two back surgeries. Aetna's records note that "[Employee] deemed disabled from her sedentary job of Supervisor of Collections, secondary to severe pain and inability to sit for sustained periods of time." (R. 7010034). Defendant Aetna approved Plaintiff for short term disability benefits. (R. 7010018). After two surgeries, the FCE concluded that Plaintiff was able to perform sedentary work on a part-time basis. (R. 7010713-722).

Plaintiff has the burden of proving that she is entitled to benefits under the Plan. See Band v. Paul Revere Life Ins. Co., 14 F. App'x 210, 212 (4th Cir. 2001) (stating "[t]he burden is on [plaintiff] to prove his or her total disability benefits [sic] under a Plan.") (citing Fuja v. Benefit Trust Life Ins. Co., 18 F.3d 1405, 1408 (7th Cir.1994)). Here, Aetna's decision

that Plaintiff was no longer disabled under the terms of the Plan is supported by substantial evidence in the Record. Aetna provided Plaintiff with proper benefits under the STD Plan when she could not perform her own occupation. Aetna deliberately and fairly gave Plaintiff notice of the information she needed to submit relevant to the LTD claim and how it would evaluate her claim after 24 months. During Plaintiff's administrative appeal of the denial of LTD benefits, Aetna again considered the medical evidence before it, solicited a peer review, communicated with Plaintiff's physicians, and ultimately affirmed its denial of Plaintiff's claim for benefits because Plaintiff did not establish that she was unable to perform any occupation. On appeal, Plaintiff failed to submit any documentary support for the conclusion that she could not perform part-time sedentary work. (R. 7010774-777). The Court finds this process deliberate, principled, and well-reasoned.

Turning to the second prong under <u>Williams</u>, and considering the eight <u>Booth</u> factors, Defendants' denial was supported by substantial evidence and remains reasonable upon consideration of the entire Record.

**1. The language of the plan and the purposes and goals of the plan.**

Under the first and second factors, the Plan's language contains reasonable provisions that provide appropriate notice to claimants and provides reasonable standards for evaluating claims for LTD benefits. Various portions of the Plan support Aetna's determination of Plaintiff's claim. The Plan states that "[y]our period of disability ends on the . . . date you fail to furnish proof that you are disabled." (R. 7000031). The Plan outlines the test for disability for Class 1 employees, as "[a]fter the first 24 … you will be deemed to be disabled on any day if you are not able to work at **any reasonable occupation** solely because of: disease; or injury." (R. 7000020)(emphasis added). The Plan, however, clearly defines "reasonable occupation" and that

15

definition does not require that Plaintiff actually be employed in the positions identified. Rather, the Plan simply requires that there be occupations in the market that Plaintiff is able to perform based on her education, training, or skill, within the physical restrictions applied to her medical condition, and which allow Plaintiff to earn 80% of her pre-disability earnings. Courts have upheld the use of labor market surveys. *See* Abromitis v. Cont'l Cas. Co./CNA Ins. Companies, 114 F. App'x 57, 62 (4th Cir. 2004) (holding in part that it was reasonable for CNA to rely on a doctor's representation that the plaintiff was capable of sedentary work with the option of changing positions every thirty minutes, and that labor market survey identified local sedentary jobs that permitted such changes of position and that CNA could fairly conclude that claimant was not "unable to engage in any occupation for which [she was] qualified by education, training or experience," as the Plan required, and that CAN's decision was supported by substantial evidence). Hence, the Court finds that the Plan's language, purpose and goals are factors that reflect reasonableness in Defendants' decision.

### 2. The adequacy of the materials considered to make the decision and the degree to which they support it.

Aetna, as the claim administrator, considered all of Plaintiff's submissions, including the medical records and statements from Plaintiff's physicians and submissions from her counsel. Prior to terminating Plaintiff's benefits, Aetna obtained an independent peer review of Plaintiff's claim, which was performed by Dr. Blumberg, a Board Certified orthopedist (R. 7010893-896). Dr. Blumberg determined, based on a comprehensive review of Plaintiff's medical records, that Plaintiff was able to perform full-time sedentary work. Further, based on Dr. Hunter's request, and the recommendation of Aetna's nurse reviewer, Aetna also obtained a FCE and IME, both of which concluded Plaintiff was able to perform part-time sedentary work.

16

(R. 7010864-873). It obtained a second labor market survey to determine whether there were any occupations Plaintiff could perform, within her education, skills, and training, the restrictions noted by her treating physicians and the IME physician, and which met the 80% pre-disability earnings requirement. Only after obtaining the peer review, FCE, IME, labor market survey, information from Plaintiff about her education, skills, and training, and the input from Drs. Aronoff and Hunter, did Aetna terminate Plaintiff's LTD benefits. (R. 7010788-792).

On appeal, Aetna reviewed all records submitted by Plaintiff and her attorney, including medical records submitted for the first time and a vocational assessment two additional peer reviews of Plaintiffs' claims were performed by Dr. Robert Swotinsky, Board Certified in occupational medicine, and Dr. Stuart Rubin, Board Certified in pain management and physical medicine. Dr. Rubin concluded that Plaintiff could perform part-time sedentary work. Dr. Swotinsky concluded that Plaintiff was able to perform full-time sedentary work. Aetna deferred to the part-time restrictions in the FCE and IME.

The Court finds that the materials upon which Aetna based its decision were adequate, that they sufficiently support its position, and that they comprise "more than a scintilla of evidence" in favor of the determination. LeFebre, 747 F.2d at 208.

### 3. Whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan.

Aetna provided Plaintiff with STD and LTD disability benefits for a certain period of time. Plaintiff argues that "medical evidence which was initially good enough to show inability to work was not after a two year period of paying benefits." (Doc. No. 15). Plaintiff misconstrues the standards under which Aetna evaluated the medical evidence and other materials at the conclusion of the 24 month period of receiving LTD benefits. As clearly laid out in the Plan, the standard for

17

a Class 1 employee refers to whether claimant can perform any occupation which does not necessarily mean her ability to perform her prior occupation. Aetna's interpretation of the medical evidence collected during the two year period and on appeal is consistent with the provisions of the plan and denial of LTD benefits under the "any occupation" standard is consistent with its earlier interpretations under the Plan. Hence, the record contains sufficient "evidence which a reasoning mind would accept as sufficient" to support Aetna's initial granting of STD and LTD benefits and to support its subsequent conclusion that Plaintiff's medical condition had improved by the time it terminated his LTD benefits. LeFebre, 747 F.2d at 208.

**4. Whether the decision-making process was reasoned and principled.**

The Court addressed this factor in part C, above, finding that Defendants' decision-making process was reasoned and principled.

**5. Whether the decision was consistent with the procedural and substantive requirements of ERISA.**

After thorough review of the Administrative Record, the Court finds that the decision is consistent with the procedural and substantive requirements of ERISA. Aetna's decision to terminate Plaintiff's benefits and to uphold the decision on appeal, was based on a principled process and sufficient evidence in the Record. Aetna obtained a peer review, an IME, a FCE, a labor market analysis, and statements from Plaintiff's physicians supporting the conclusions that Plaintiff could perform part-time sedentary work prior to terminating her benefits. On appeal, Aetna obtained multiple peer reviews and reviewed additional records submitted by Plaintiff. Aetna's decision to uphold the termination of benefits was based on the entirety of the Record and supporting evidence that Plaintiff was able to perform a reasonable occupation as defined in the Plan.

### 6. Any external standard relevant to the exercise of discretion.

This factor is inapplicable to the present case.

### 7. The fiduciary's motives and any conflict of interest it may have.

Aetna acknowledges that its dual role as both claim reviewer and claim payer may give rise to a potential conflict of interest. The Record is devoid of any evidence that Defendants' structural conflict of interest impacted Aetna's decision making. The presence of a structural conflict, however, does not mandate that a higher standard be applied. Rather, "courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest." Wilkinson v. Sun Life & Health Ins. Co., No. 5:13CV87-RLV, 2015 WL 5124323, at *11-12 (W.D.N.C. Sept. 1, 2015). "And any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination." Wilkinson, 2015 WL 5124323, at *11-12.

Here, Aetna approved and paid Plaintiff's claim for 2 years before her benefits were terminated, after a thorough, well-reasoned, decision making process comprised of three independent peer reviews, a FCE, an IME, a labor market survey, and input from Plaintiff's treating physicians. Aetna provided a detailed explanation of why Plaintiff's claim for LTD benefits were being terminated, provided Plaintiff the opportunity to submit additional records, and considered those records in denying her appeal. Aetna's structural conflict was a non-factor within the context of this case. *See e.g.,* Glenn, 554 U.S. at 115.

In considering whether Defendants' decision to deny Plaintiff's claims was reasonable, and considering the Booth factors above, the Court finds that Aetna's decision was supported by substantial evidence under the second prong. Williams, 609 F.3d at 630.

IV. CONCLUSION

Aetna engaged in a deliberate, principled reasoning process, supported by substantial evidence. Therefore, its decision to terminate Plaintiff's claim for LTD benefits was not an abuse of discretion. Because the Court finds that Defendants' decision to deny Plaintiff LTD benefits was reasonable in that it resulted from a deliberate, principled reasoning process and was supported by substantial evidence, it will uphold Aetna's decision denying Plaintiff the requested benefits. *See* Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 629–30 (4th Cir. 2010).

**ORDER**

**IT IS, THEREFORE, ORDERED**, that Defendants' Motion for Summary Judgment (Docs. No. 12, 16) is **GRANTED**.

Signed: June 14, 2016

Frank D. Whitney
Chief United States District Judge